Matter of Brightonian Nursing Home, Inc. v Zucker (2023 NY Slip Op 00008)

Matter of Brightonian Nursing Home, Inc. v Zucker

2023 NY Slip Op 00008

Decided on January 5, 2023

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 5, 2023

533533 533534

[*1]In the Matter of The Brightonian Nursing Home, Inc., et al., Appellants,
v
Howard Zucker, as Commissioner of Health, Respondent. (And Another Related Proceeding.)

Calendar Date:November 17, 2022

Before: Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Harter Secrest & Emery LLP, Rochester (Christina M. Deats of counsel), for appellants.
Letitia James, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondent.

Lynch, J.
Appeals from two judgments of the Supreme Court (Roger D. McDonough, J.), entered May 18, 2021 and May 19, 2021 in Albany County, which, in two combined proceedings pursuant to CPLR article 78 and actions for, among other things, declaratory judgment, granted respondent's cross motion for summary judgment dismissing the petitions/complaints.
Public Health Law § 2808 (5) (c) prohibits a nonpublic residential health care facility from withdrawing equity or transferring assets that, in the aggregate, exceed 3% of its total annual revenue for patient care services without prior written approval from respondent Commissioner of Health. In August 2017, the Department of Health (hereinafter DOH) issued guidance in the form of a "Dear Administrator Letter" (hereinafter DAL) describing the transactions covered by the statute and the procedure for requesting approval for equity withdrawals.
Petitioners are proprietary residential health care facilities operating throughout the state (see Public Health Law § 2801 [3]). In December 2017, they commenced the first of these two hybrid proceedings/actions challenging respondent's interpretation of Public Health Law § 2808 (5) (c) as contained in the 2017 DAL and accompanying materials, interposing six causes of action alleging due process, equal protection and State Administrative Procedure Act violations and seeking declaratory and other relief.
After petitioners commenced the first proceeding, DOH superseded the 2017 DAL and related materials by issuing a new DAL along with a "Frequently Asked Questions" sheet (hereinafter the FAQs) in January 2018. Among other guidance, the FAQs clarified that "[f]ederal or state income taxes that must be paid directly by a business corporation
. . . will not count toward the 3% threshold." In contrast, a "non-tax-paying entity" such as a limited liability company, S corporation, partnership or sole proprietorship — i.e., a pass-through entity (see e.g. Tax Law § 860) — attributes income to its owner and, as such, federal and state income tax obligations fall on the owner,[FN1] not the entity.[FN2] Accordingly, the FAQs continued, withdrawals by a facility structured as a pass-through entity to pay federal and state income taxes are equity withdrawals to which the 3% prior-approval threshold requirements of Public Health Law § 2808 (5) (c) apply.
Petitioners then commenced the second of these two hybrid proceedings/actions, challenging the 2018 DAL, FAQs and related materials, alleging similar constitutional and statutory wrongs as in the first proceeding and seeking similar relief. Pre-answer motion practice ensued, after which Supreme Court dismissed most of the causes of action in the first proceeding as moot insofar as they challenged the superseded 2017 DAL, leaving intact petitioners' substantive due process and equal protection claims. The court also dismissed so much of the second proceeding as sought to compel respondent to rescind the 2018 DAL and accompanying guidance[*2], but allowed petitioners to proceed with their substantive due process, equal protection and State Administrative Procedure Act causes of action, along with their claim that respondent's application of Public Health Law § 2808 (5) (c) to income tax expenditures was barred by the Court of Appeals' interpretation of the statute as announced in Brightonian Nursing Home v Daines (21 NY3d 570, 577 n 3 [2013]).
Respondent joined issue, after which petitioners and respondent cross-moved for summary judgment in both proceedings. In two identical decisions, Supreme Court addressed each of petitioners' remaining causes of action, concluded that none of them had merit and therefore granted respondent's cross motion dismissing the petitions/complaints. Petitioners appeal. We affirm.
We begin with Brightonian, in which the Court of Appeals upheld Public Health Law § 2808 (5) (c) against facial challenges to its constitutionality (see Brightonian Nursing Home v Daines, 21 NY3d at 577-579). In doing so, the Court noted that "[w]ithdrawals for facility purposes, including the payment of salaries and taxes, are not counted toward the [3%] threshold" (id. at 577 n 3). Petitioners maintain that this footnote bars respondent from counting withdrawals to satisfy a tax obligation based on earnings generated by a pass-through entity. We disagree. As the Court explained, Public Health Law § 2808 (5) (c) responds to the Legislature's concern that a facility's improvident withdrawal of substantial assets would compromise the facility's operation and "occasion irreparable harm within an especially fragile and dependent resident population" (Brightonian Nursing Home v Daines, 21 NY3d at 578). Given this context, "[w]ithdrawals for facility purposes" are necessarily those that concern a facility's own financial obligations and expenses (id.at 577 n 3). By comparison, the footnote upon which petitioners rely cites to the regulatory definition of "withdrawal," which includes a transfer of facility assets for the direct or indirect benefit of its operator (10 NYCRR 400.19 [a] [3] [i]). Petitioners do not dispute that, for a pass-through entity, income tax liability is borne by the owner, not the facility. Thus, given the regulatory scheme, income tax payments by such an entity would necessarily be equity withdrawals or asset transfers satisfying the obligation of the owner, not the facility (see 10 NYCRR 400.19 [a] [2], [3] [i]; [c]). In other words, even though such withdrawals are for tax payments, they are not "[w]ithdrawals for facility purposes" (Brightonian Nursing Home v Daines, 21 NY3d at 577 n 3).
Likewise unavailing is petitioner's argument that respondent's policy of requiring prior approval for a pass-through entity's tax payments under Public Health Law § 2808 (5) (c) constitutes an unlawfully promulgated agency rule. As illustrated above, the challenged portion of the FAQs is a "reasonable interpretation[] of existing regulations [and] statutes" (Matter of [*3]Board of Educ. of the Kiryas Joel Vil. Union Free Sch. Dist. v State of New York, 110 AD3d 1231, 1233 [3d Dept 2013], lv denied 22 NY3d 861 [2014]; see Matter of Isabella Geriatric Ctr., Inc., v Novello, 38 AD3d 356, 358 [1st Dept 2007]). Moreover, the application requirements and evaluative criteria are set out by existing regulation (see 10 NYCRR 400.19 [c]). Therefore, the equity withdrawal forms "merely address the type of documentation needed to establish whether a predetermined test of eligibility [for approval] has been met" (Matter of Board of Educ. of the Kiryas Joel Vil. Union Free Sch. Dist. v State of New York, 110 AD3d at 1233-1234). Accordingly, these items fall squarely within the exception to formal notice-and-comment rulemaking (see NY Const, art IV, § 8; State Administrative Procedure Act § 102 [2] [a] [iv]; see generally State Administrative Procedure Act § 202).
We are also unconvinced that respondent's policy denies petitioners the equal protection of the laws. True, the policy on its face treats petitioners — pass-through entities all — differently from business corporations or, to use the classification adopted by the parties, C corporations (see generally Internal Revenue Code [26 USC] § 1361 [a] [2]; Tax Law § 208 [1-A]). Also true, proprietary residential health care facilities that provide services throughout this state, receive funding through Medicare and the state's Medicaid program and generate income subject to tax are, for our purposes, similarly situated regardless of ownership structure (compare Bay Park Ctr. for Nursing & Rehabilitation, LLC v Shah, 111 AD3d 1227, 1229 [3d Dept 2013]). However, as we are not faced with a suspect classification or differential treatment with respect to a fundamental right, our inquiry is limited to "whether the . . . classification is rationally related to a legitimate government objective" (Matter of Mallinckrodt Med. v Assessor of Town of Argyle, 292 AD2d 721, 723 [3d Dept 2002] [internal quotation marks and citation omitted]; see Matter of National Energy Marketers Assn. v New York State Pub. Serv. Commn., 167 AD3d 88, 91 [3d Dept 2018]). Here, as explained above, the classification flows from who is ultimately liable for income tax — the entity or its owner. If an entity is not directly liable for a tax, then, in our estimation, it is rational for respondent to burden that entity's payment of that tax with additional scrutiny in pursuit of ensuring the ongoing financial health of that facility along with the system of providers generally (see Brightonian Nursing Home v Daines, 21 NY3d at 577).
Lastly, petitioners have failed to demonstrate that the policy works a substantive due process violation. As Supreme Court concluded, insofar as respondent's policy restricts the alienation of their equity and assets, petitioners have identified a cognizable property interest subject to due process protections (see Matter of Loudon House LLC v Town of Colonie, 123 AD3d 1406, 1409 [3d [*4]Dept 2014]). Yet, as discussed above and confirmed in Brightonian, the governmental purpose advanced by the policy and underlying statute and regulation is legitimate and not "offensive to substantive due process" (Brightonian Nursing Home v Daines, 21 NY3d at 575). Even accepting that it may be difficult to estimate income and tax liability in time to obtain approval for an equity withdrawal and comply with tax return deadlines, such problems are not enough to sustain petitioner's substantive due process challenge (see id. at 577-578; Braden v Sturges, 189 AD3d 2015, 2016 [3d Dept 2020]).
Petitioners' remaining arguments have been reviewed and deemed meritless.
Garry, P.J., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the judgments are affirmed, without costs.

Footnotes

Footnote 1: We use "owner" as a shorthand for a group or individual with ownership interests in the various pass-through entities at issue — members, shareholders, partners or sole proprietor.

Footnote 2: We note in passing that, during the pendency of these appeals, the Legislature enacted Tax Law article 24-a (see L 2021, ch 59, part C), which provides an option to partnerships and New York S corporations to pay a pass-through entity tax, allowing each direct partner, shareholder or member to claim a credit against his or her state income tax (see generally Tax Law §§ 862, 863, 865, 866). Election of the pass-through entity tax must be made annually (see Tax Law § 861).