◼ In the Matter of VESTAL-PENN ENTERPRISES, Respondent, v HERBERT N. COHEN et al., Constituting the City Planning Commission of the City of Binghamton, et al., Appellants.—Appeal from a judgment of the Supreme Court at Special Term, entered April 28, 1977 in Broome County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to the extent of adjudging that an ordinance adopted by the Binghamton City Council was duly enacted and effective, and directed appellant city planning commission to consider petitioner's application for a building permit, and otherwise denied additional relief requested by the parties. On November 15, 1976 the Binghamton City Council, a nine-member board, passed Introductory Ordinance No. 260 as an amendment to the City Zoning Ordinance by a vote of 7 to 2. The ordinance was vetoed by the Mayor of Binghamton and such veto was filed with the city clerk on November 17, 1976. On November 19, 1976 a veto message was issued. At a *special*

meeting of the city council on November 19, 1976, called by the president of that body, a motion to override the veto was ultimately introduced which was carried by another vote of 7 to 2. Thus, the veto of Introductory Ordinance No. 260, also designated as Permanent Ordinance No. 235, was apparently overridden. On November 24, 1976 the Binghamton Corporation Counsel issued an opinion to the effect that the veto override was invalid in that such an action could only be taken at a *regular* meeting of the city council. Petitioner, a partnership which owns real property in the City of Binghamton in the area purportedly rezoned, submitted an application on December 13, 1976, for the issuance of a building permit for a proposed business development in accordance with uses which allegedly would be permitted pursuant to the amendment. The planning commission refused to consider the application, taking the view that the ordinance was ineffective. This appeal is from a judgment of Special Term in petitioner's article 78 proceeding finding that the ordinance was properly enacted and directing respondent to consider petitioner's application. There is no challenge on this appeal to any other aspect of Special Term's judgment. Initially we note that the article 78 proceeding was properly instituted. A zoning board of appeals, to which it is contended petitioner should have appealed prior to the institution of this proceeding, is not empowered to determine the validity of a zoning ordinance. Therefore, petitioner was not required to pursue any further administrative relief. We now turn to the sole substantive issue urged upon us by appellant in support of its contention that the ordinance was not properly enacted. Its contention is that the Mayor's objections were required to be presented to city council at its "next regular meeting" under section 38 of the Second Class Cities Law, and that an override vote prior to such regular meeting was a nullity. Petitioner contends, on the other hand, that section 104 of the Optional City Government Law (L 1914, ch 444, § 104) covers the procedure for a vote by city council to override a mayoral veto, and that this statutory provision only requires an action by council at its "next meeting". The problem before us is a result of careless legislative draftsmanship. Chapter 444 of the Laws of 1914 created a method whereby cities could elect to be governed under various forms designed as Plan A, B, C, D, E, F or G. Plan F, adopted by the City of Binghamton, deals with local legislative bodies having one councilman for each ward in the city.[1] Section 115 of chapter 444 creating the form of government entitled Plan F, provides that the provisions otherwise applicable to Plan D, *to wit,* sections 102 to 108 of chapter 444, shall govern. Section 104 of chapter 444 as specifically made applicable to Plan F governments by virtue of the provisions of section 115 provides for an override vote which shall be unanimous in the case of a three-member council, and shall require four affirmative votes in the case of a five-member council. There is no statutory provision in chapter 444 specifically setting forth the number of votes required in a council created pursuant to section 115, and appellant therefore urges that section 104 is inapplicable to a veto override vote in its entirety. We disagree. Without losing sight of the legislative omission previously referred to, we are of the view that it is not of significance in the present case because neither of the parties suggests that the veto override vote as taken was numerically improper. The sole issue presented is whether the vote could be taken at council's "next meeting" pursuant to section 104, rather than at "its next regular meeting"

---

1. At the time of Binghamton's election of Plan F it consisted of 13 wards. Pursuant to subsequent legislation the Binghamton City Council now consists of nine members.

under section 38 of the Second Class Cities Law. Insofar as this particular element of the procedure is concerned, there is no reason which has been presented to us for concluding that section 38 has superseded section 104.[2] We are, therefore, of the view that the action by city council to override the veto was properly undertaken at its November 19, 1976 special meeting, wherefore it must be further concluded that the ordinance is valid. Special Term was, therefore, correct in directing appellant to consider petitioner's application for a building permit. We decide no other issue. Judgment affirmed, without costs. Greenblott, J. P., Kane, Main, Mikoll and Herlihy, JJ., concur.

---

2. Chapter 444 of the Laws of 1914 was repealed by section 1 of chapter 765 of the Laws of 1939, but provided a saving clause whereby governmental plans already in effect pursuant to said chapter 444 were to remain in force. Binghamton had adopted Plan F prior to the repeal.